**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**

**Sierra Club, Inc.; Florida Public Interest Research Group Citizen Lobby, Inc.; and Save Our Suwannee, Inc.;**

**Plaintiffs,**

**v.** **Civil Action No:** 4:04cv120 spm/ak

**Michael O. Leavitt, in his official capacity as Administrator of the United States Environmental Protection Agency; Jimmy Palmer, in his official capacity as Regional Administrator of the United States Environmental Protection Agency, Region 4; and the United States Environmental Protection Agency**

**Defendants.**

04 APR 22 AM 8:31

FILED

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## I. PRELIMINARY STATEMENT

1. Plaintiffs Sierra Club, *et al*, challenge the United States Environmental Protection Agency's ("EPA") failure to ensure that hundreds of miles and streams and rivers and hundreds of acres of lakes and ponds meet the minimum requirements of health and safety required by the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"). This suit is brought under the Administrative Procedure Act ("APA") challenging EPA's approval of the State of Florida's identification of Water Quality Limited Segments ("WQLSs") that require Total Maximum Daily Loads ("TMDLs") pursuant to Clean Water Act § 303(d), 33 U.S.C. § 1313(d). As set forth below,

Rcpt 400 103718
$150 cls
Summons Issued

Defendant EPA arbitrarily: a) approved the State of Florida's 2002 § 303(d) list; b) approved the delisting or removal of waters from the § 1998 303(d) list; c) failed to add waters to the 2002 and1998 § 303(d) lists known to not be meeting water quality standards; and d) approved the State's low prioritization and lack of schedule for certain waters not meeting water quality standards due to excessive mercury in the water, sediment or fish tissue.

2. The § 303(d) lists that EPA approved for the State of Florida fail to include 73 waterbodies known to EPA to not be meeting water quality standards due to excessive mercury, 24 lakes identified as under Florida Health Advisories for mercury, and 64 waterbody/pollutant combinations not meeting standards due to excessive coliforms, ammonia, chlorides, low dissolved oxygen and nutrients.

3. EPA failed to consider all relevant information about Florida's waterbodies and pollutants as required. Instead, EPA approved the State of Florida's arbitrary exclusion of all water quality data over 7.5 years old. In addition, EPA approved the removal of waterbodies from Florida's § 303(d) list, despite the fact that they had previously been determined to be impaired, without evidence that they are now meeting water quality standards. As a result, these waters are not scheduled for the establishment of TMDLs and have been excluded from the subsequent implementation of water-quality based point and nonpoint source pollution control measures.

## II. JURISDICTION AND VENUE

4. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States); and 28 U.S.C. §§ 2201-2202 (declaratory judgment action). Mandamus lies pursuant to 28 U.S.C. § 1361.

5. Venue is appropriate in this judicial district and in this Court under 28 U.S.C. § 1391(e). Defendants are a federal agency and officers thereof, and a substantial part of the events or omissions giving rise to the claims herein occurred in this district. In addition, this suit is related to two other cases pending in this district, *Florida Public Interest Research Group et. al. v. U.S.E.P.A*, N.D. Fla no. 4:02cv00408 (on appeal to the 11th Circuit Court of Appeals); and *Florida Wildlife Federation v. Browner*, N.D. Fla. no. 4:98cv356-WS (Consent Decree entered 1999).

6. Although neither the APA nor the CWA require the exhaustion of administrative remedies, Plaintiffs have exhausted their administrative remedies or have no administrative remedies for the matters raised herein.

## III. PARTIES AND STANDING

**Plaintiffs**

7. The Sierra Club, Inc., founded in 1892, is the nation's oldest grass-roots environmental organization. The Sierra Club is dedicated to the protection and preservation of the natural and human environment, including Florida's waters. The Sierra Club's purpose is "to explore, enjoy and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; to educate and enlist humanity to protect and restore the quality of the natural and human environments." The Sierra Club has members who use Florida's waters for fishing, recreation, business, scientific study and for the enjoyment of flora and fauna.

8. Florida Public Interest Research Group Citizen Lobby, Inc. ("FPIRG") is a non-profit corporation, headquartered in Tallahassee, Florida. FPIRG uncovers threats to public health and well-being and fights to end them, using investigative research,

grassroots organizing, and advocacy. It conducts routine environmental testing and monitoring and advocates on behalf of its members, residents and non-residents of the State of Florida to help ensure the environmental integrity of Florida's waters. One of FPIRG's ongoing campaigns is an effort to protect the environment and public health from the negative impacts of water pollution and exposure to toxic chemicals. FPIRG works to educate policy makers and the public at large about the harmful impacts that water pollution has on aquatic ecosystems, drinking water supplies, and public health and safety. Substantial numbers of members of FPIRG enjoy boating, fishing, and observing birds and other wildlife in and around Florida's waters.

9. Save Our Suwannee, Inc. ("SOS") is a non-profit corporation, headquartered in Bell, Florida. SOS's mission is to maintain oversight over those activities, both public and private, which impact northern Florida's environment, particularly environmental issues concerning the Suwannee River in north-central Florida. It furthers this mission by working with Florida's citizens as well as federal, state and local governments. SOS is dedicated to preserving and protecting the soil, flora, birds, animals, surface water, and the underground aquifer in the Suwannee River Basin. Members of SOS enjoy boating, fishing, and observing birds and other wildlife in the Suwannee River Basin.

10. The Plaintiff environmental organizations' members use for fishing, aesthetic, recreational, and economic purposes a representative number of Florida's impaired or § 303(d) listed waters.

11. The Plaintiff environmental membership organizations each have members who are adversely affected by the reduced quality of, or failure to meet water quality standards in, a representative number of the Florida lakes, rivers and streams that the

State of Florida and EPA wrongly failed to include on the § 303(d) list for the State of Florida, including but not limited to a representative number of those waters identified in Attachments A - F hereto.

12. The organizations and their members are adversely affected by the failure of the Defendants to fully identify and list WQLSs in Florida, as such streams will not receive the maintenance and improvement of their water quality that occurs by listing as a WQLS and subsequent establishment of a TMDL. Plaintiffs' injuries – that are caused by EPA – can be redressed by this Court.

13. In addition, the Plaintiff environmental organizations, or some of them, in furtherance of their organizational goals, use the type of information that would be available were Florida or EPA to create an adequate WQLS list as required under 33 U.S.C. § 1313(d). Plaintiffs' members and staff have gathered available information relevant to the WQLS and TMDL process, analyzed that information, and intend to use it in the future. They have used it, for example, in public comments on the TMDL program. Accordingly, the absence of information required by 33 U.S.C. § 1313(d) directly and adversely affects the informational interests and organizational activities of the Plaintiffs.

**Defendants**

14. Defendant Leavitt is the Administrator of the EPA. Pursuant to the Clean Water Act and the regulations promulgated thereunder, he is charged with the supervision and management of all EPA decisions and actions, and with the administration of the Clean Water Act. Mr. Leavitt is sued in his official capacity only.

15. Defendant Palmer is the Regional Administrator of EPA Region IV, which

includes the State of Florida. Pursuant to the Clean Water Act and the regulations promulgated thereunder, he is charged with the supervision and management of EPA decisions and actions, and with the administration of the Clean Water Act in Region IV. Mr. Palmer is sued in his official capacity only.

16. Defendant EPA is the agency of the federal government that has the primary responsibility of administering the Clean Water Act and protecting the waters of the United States from pollution.

## IV. LEGAL BACKGROUND

17. Congress passed the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the nation's waters." CWA§ 101(a), 33 U.S.C. § 1251.

18. The CWA focuses on two general sources of pollution: point sources and non-point sources. Point sources are "any discernible, confined, and discrete conveyance," including pipes, ditches, conduits or vessels "from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). Non-point sources are any non-discrete source, such as runoff from agriculture, forestry, or construction activity. Point source pollution is subject to technology-based controls through the National Pollution Discharge Elimination System (NPDES) permit process, which sets limits on the amount of pollutants that may be released from each point source. Where such controls are inadequate to maintain clean water, the CWA mandates a water-quality-based approach. CWA § 303(d), 33 U.S.C. § 1313(d).

19. States must establish ambient water quality standards based on the uses of the waters and the amount of pollution that would impair those uses, subject to review and

approval by EPA. CWA § 303(a)-(c), 33 U.S.C. § 1313(a)-(c). States establish these standards at levels necessary to protect the "public health or welfare, enhance the quality of water and serve the purposes of" the CWA. CWA § 303(a)-(c), 33 U.S.C. § 1313(1)-(c).

20. Each state must then identify all waters for which technology-based NPDES permits alone are insufficient to implement applicable water quality standards. CWA § 303(d)(1)(A), 33 U.S.C. § 1313(d)(1)(A). These waters are called Water Quality Limited Segments (WQLSs). 40 C.F.R. § 130.10(d)(6) and § 130.7(b)(5) require the use of "all existing readily available water quality-related data and information" in establishing § 303(d) lists.

21. Having identified all WQLSs within its boundaries, a state must then prioritize them based on" the severity of pollution and the uses to be made of such water." CWA § 303(d)(1)(A), 33 U.S.C. § 1313(d)(1)(A).

22. States must then develop, in accordance with the priority ranking of the WQLSs, a TMDL for each pollutant identified by the EPA as suitable for such calculation "at a level necessary to implement the applicable water quality standards with seasonal variations and a margin of safety which takes into account any lack of knowledge concerning the relationship between effluent limitations and water quality." CWA § 303(d)(1)(C), 33 U.S.C. § 1313(d)(1)(C). In other words, TMDLs establish the maximum amount of pollutants a water body can receive on a daily basis without violating the state's water quality standards.

23. A TMDL includes best estimates of pollution from non-point sources and natural background sources, pollution from point sources, and a margin of safety. 40

C.F.R. § 130.2(i).

24. Each state must submit to EPA for its review and approval or disapproval a list of WQLSs, known as its Clean Water Act § 303(d) list, and TMDLs "from time to time, with the first submission not later than one hundred and eighty days after the date of publication" of EPA's identification of pollutants suitable for TMDL calculation. CWA § 303(d)(2), 33 U.S.C. § 1313(d)(2). EPA published its identification in December 1978. The first submissions by all states to the EPA of WQLSs and TMDLs were due June 26, 1979. Under current EPA guidance and regulations, states submit their WQLS lists every two years. 40 C.F.R. § 130.7.

25. Once states submit their lists of WQLSs and TMDLs, EPA must review the submissions within 30 days. If EPA disapproves of the identification of WQLSs or the list of TMDLs, it has 30 days in which to make its own identification or list. CWA § 303(d)(2), 33 U.S.C. § 1313(d)(2). Similarly, if a state fails to submit a list of WQLSs or TMDLs, EPA has a mandatory duty to make its own identification or list.

## V. BACKGROUND FACTS

### A. History of Florida's Non-Compliance with Clean Water Act § 303(d)

26. TMDLs are required for all WQLSs. Section 303(d), 33 U.S.C. § 1313(d) required the state's first submissions of WQLSs and TMDLs by June 26, 1979. The State of Florida, however, did not submit its first WQLS list to EPA for approval until 1992. EPA responded by conditioning approval of the state's 1992 WQLS submission on improvement of the WQLS list. The state did not make the requested changes, but EPA did not disapprove the submission as required by 33 U.S.C. 1313(d)(2).

27. Florida submitted its 1994 WQLS list on September 15, 1995: 17 and 1/2 months late. This list did not identify all WQLSs in the State. Nevertheless, EPA approved this list.

28. Florida submitted another WQLS list for 1996. This list did not identify all WQLSs in the State. Nevertheless, EPA approved this list.

29. On September 17, 1998 Florida submitted its 1998 WQLS list. This list did not identify all WQLSs in the State. The 1998 list did, however, include nearly 700 waters impaired with pollutants such as coliforms, nutrients, dissolved oxygen, turbidity, suspended solids, biological oxygen demand, metals, dioxin, and mercury. To comply with 40 C.F.R. § 130.7(d)(1), which requires a schedule for TMDLs, the 1998 list also included a schedule for TMDL development for the waters on the 1998 list. EPA approved the list and schedule on November 24, 1998.

30. In 1998 — 19 years after the initial TMDL submissions were due — only three TMDLs had been approved for Florida when the number of TMDLs the state itself anticipated as necessary was in the hundreds. This resulted in a lawsuit, *Florida Wildlife Federation et. al. v. U.S.E.P.A.*, N.D. Fla. no. 4:98cu356-ws. That lawsuit culminated in a 1999 Consent Decree, which set a 12-year schedule for establishing TMDLs for waters on the 1998 § 303(d) list, with all TMDLs to be established by the State by 2011. If the State does not meet that schedule, under the Consent Decree EPA must establish the TMDLs itself.

**B. <u>Florida's State Regulations and the § 303(d) List</u>**

31. After the 1998 list and 1999 Consent Decree, the State of Florida promulgated a regulation that, *inter alia*, specifies a two-step process for identifying WQLSs. Fla.

Admin. Code Chap. 62-303. This process became effective June 10, 2002.

32. Under the first step, surface waters of the state that meet thresholds indicating they are potentially impaired are listed on a "Planning List." Waters on the Planning List are then scheduled for additional monitoring and evaluation in more detail to verify whether they are impaired. When additional data are gathered and assessed, then the waters are placed on the state's "Verified List" of impaired waters if they meet rule thresholds for the verified list. The Verified List, which is the list of waters for which TMDLs will be developed, is then adopted by Secretarial Order, and once adopted, the Verified List is submitted to EPA as the State's 303(d) list.

33. Florida's regulations state: "A waterbody shall be placed on the planning list if it fails to meet the minimum criteria for surface waters established in Rule 302.500, F.A.C.; any of its designated uses, as described in this part; or applicable water criteria as described in this part." 62-303.300, F.A.C. These regulations further state: "the planning list shall not be used in the administration or implementation of any regulatory program, and shall be submitted to EPA for informational purposes only." *Id.* at 62-303.150(1). Thus, the "planning" list does not constitute the § 303(d) list. Rather, the State's "verified" list is its § 303(d) list, which the State submits to EPA for approval or disapproval under CWA § 303(d)(2), 33 U.S.C. § 1313(d)(2). See, 62-303.150(1) F.A.C. which provides, "[t]he resultant verified list of impaired waters, which is the list of waters for which TMDLs will be developed by the Department . . . will be adopted by Secretarial Order . . . [and] will be submitted to the EPA pursuant to paragraph 303(d)(1) of the CWA."

34. For determining waters on the verified list, Florida's regulations provide that, "[e]xcept for data used to evaluate historical trends in chlorophyll a or TSIs, the Department shall not use data that are more than 7.5 years old at the time the water segment is proposed for listing on the verified list." *Id.* at 62-303.400(2) (emphasis supplied). The State also relies on Department of Health fish consumption advisories in verifying impaired waters, but requires "sufficient data from within the last 7.5 years to support the continuation of the advisory." *Id.* at 62-303.470(1)(c) (emphasis supplied). These temporal limitations on data have significant consequences for waters on the § 303(d) list because the State has applied them to exclude or remove, i.e. "delist," waters from the 1998 WQLS list.

35. Once an impaired water makes it to the "verified" list, the DEP establishes a TMDL development schedule and "prioritize[s] impaired water segments according to the severity of the impairment and the designated uses of the impairment, taking into account the most serious water quality problems; most valuable and threatened resources; and risk to human and aquatic life." *Id.* at 62-303.500(1). Waters are listed as low priority if, *inter alia*, they "are listed before 2010 due to fish consumption advisories for mercury (due to the current insufficient understanding of mercury cycling in the environment)." *Id.* at 62-303.500(3)(a-c).

## C **Florida's 2002 § 303(d) List**

36. Under Florida's watershed basin monitoring program, the State is divided into five watershed basins. The State's identification of WQLSs is scheduled for one of those five basins every two years. The 1998 § 303(d) list is then to be updated every 2 years, with the new WQLSs identified to be added to the State's § 303(d) list. The first basin

came due in 2002. That is "Basin 1" or "Group 1" and consists of St. Marks/ Ochlockonee, Suwannee River, Tampa Bay, Ocklawaha River, Lake Okeechobee, and the Everglades West Coast Basin.

37. On October 1, 2002 Florida's submitted the updated § 303(d) list for Basin 1 to EPA. (Herein this is the "2002 § 303(d) list".) The 2002 § 303(d) list the State submitted for approval was its "Verified List" for Basin 1, that it had adopted by Secretarial Order. EPA partially approved that list on June 11, 2003. Although EPA disapproved the de-listing or removal of certain waters from the State's § 303(d) list at that time, it approved the delisting or removal of 28 waters and pollutants. EPA also proposed adding certain waters to the list.

38. As set forth more fully below, the 2002 § 303(d) list, as approved by EPA, is incomplete and not in compliance with law because it omitted numerous waterbodies not meeting water quality standards or their designated uses due to mercury in the water, sediment or fish tissue. The EPA wrongfully approved the State's failure to schedule some or all of these mercury-impaired waters for TMDL establishment.

39. EPA also wrongfully approved Florida's under-inclusive and incomplete 2002 303(d) list because Florida disregarded data older than 7.5years. This violates 40 C.F.R. §§ 130.10(d)(6) and 130.7(b)(5), which require the use of "all existing readily available water quality-related data and information" in establishing § 303(d) lists.

40. EPA also wrongfully approved the State's delisting of: (1) water segments that had not satisfied water quality standards within the last 7.5 years; (2) waters delisted based on their "natural conditions;" and, (3) waters containing excessive nutrients. As a result, these waters have been excluded from the TMDL program, and denied the actions

required for restoring water quality in those waterbodies under CWA § 303(d) and (e), 33 U.S.C. 1313(d) and (e).

41. As part of its June 11, 2003 approval of the State's § 2002 303(d) list, EPA also re-approved the 1998 § 303(d) list as the § 303(d) list for the State, subject to the modifications made for the Basin 1 waters. In re-approving that list, however, EPA failed to differentiate between waters that the State had placed on its "verified list", i.e. its § 303(d) list, and those the State had place on its "planning list", which is not on the § 303(d) list. Instead, EPA approved these as if they were one comprehensive § 303(d) list, meaning the § 303(d) list EPA approved is not consistent with the one submitted by the State as its § 303(d) list.

## FIRST CLAIM FOR RELIEF

EPA's Approval of Florida's § 303(d) List
that does not includes all Mercury Impaired Waters
Contravenes the CWA and is Actionable Under the APA

42. Plaintiffs hereby incorporate all preceding paragraphs, as if repeated verbatim herein.

43. Mercury is a serious developmental toxin, primarily affecting fetal development. About 630,000 children are born each year at risk for lowered intelligence and learning problems cause by exposure to high levels of mercury in the womb, according to analysis by EPA. Consuming mercury-laden food can cause damage to the brain and nervous system and can lead to developmental neurological disorders, such as cerebral palsy, delayed onset of walking and talking, and learning disabilities.

44. Mercury also has serious effects on adults. The health effects that can result vary depending on the level of exposure. Effects can include seizures, problems with the

central nervous system, such as loss of feeling or impairment of vision, kidney damage and failure, gastro-intestinal damage, cardiovascular collapse, shock, and death.

45. Most mercury pollution is released into the air. It falls directly onto waterways or is deposited on land where it can be washed into the water. Bacteria in the water cause chemical changes that transform mercury into a highly toxic form – methylmercury. Methylmercury accumulates in fish, with larger fish generally accumulating higher levels of methylmercury. The primary exposure pathway for most Americans is through consumption of fish with high levels of methylmercury.

46. According to the Center for Disease Control and Prevention, almost eight percent of the roughly 50 million American women of child-bearing age (16-49) have blood levels exceeding the 5.8 parts per billion precautionary standard set by EPA. The EPA Food Advisory Committee has warned women who are pregnant to avoid eating several types of fish because they contain high levels of mercury. EPA advises the same group of women to consume no more than 12 ounces of fish and shellfish per week and to vary the kinds of fish that they eat.

47. Coal-fired power plants are the largest single man-made source of mercury pollution. These plants are not the only source of mercury in waterbodies, however. Other sources include pulp and paper mills and municipal wastewater treatment facilities. The Florida Department of Environmental Protection has released the findings of a decade-long study of mercury in southern Florida and the Everglades that found that regulations of mercury pollution from medical and municipal waste incinerators helped remove this toxic pollutant from the environment and the food chain in a few years.

48. Due to the health effects from mercury contaminated food, the state and federal governments issue fish consumption advisories. More advisories are issued each year for mercury than for other pollutants. These advisories provide information on which fish should not be consumed at all because of the high level of mercury, and also which fish should be consumed in limited amounts for at risk groups or for all people. These advisories include fish purchased in stores and restaurants, as well as fish caught by family and friends.

49. Based on years of testing, the Florida Department of Health has issued a statewide fish consumption advisory for largemouth bass, bowfin, and gar, not including 50 waterbodies identified in its 2003 "Florida Fish Consumption Advisories" brochure, which are covered by an EPA health advisory. In addition , the Florida Department of Health has issued a fish consumption advisory in effect for all coastal waters for certain species and sizes of fish. That includes, for example, no consumption of King Mackerel greater than 39 inches and shark greater than 43 inches. There is limited consumption advised for several other species and sizes of fish.

50. Florida has other advisories in effect that are in addition to, or distinct from, the statewide and coastal wide fish consumption advisories. According to the State of Florida's 2002 Clean Water Act § 305(b) Report to EPA, 9.3 percent of lake acres and 3.9 percent of river miles are under an advisory. The National Estuary Program (NEP) sites of Indian River Lagoon, Charlotte Harbor, Sarasota Bay, and Tampa Bay, which are all in Florida, have fish consumption advisories for mercury. The National Estuarine Research Reserve System (NERRS) sites in Rookery Bay, Florida and Apalachicola Bay, Florida, both have fish consumption advisories for mercury.

51. Despite the known, serious dangers of mercury ingestion and the fish consumption advisories applicable to the State of Florida, the State's 2002 § 303(d) list, as approved by EPA, does not include numerous waters known by the State and EPA to not be meeting their designated uses due to mercury in the water, sediment or fish tissue. Ninety-seven (97) mercury impaired waters falling into this category are listed in Attachments A, B and C hereto, which are incorporated herein.

52. Attachment 2 to the State's "Documentation for the 2002 Update to the State of Florida's 303(d) list" that was submitted to EPA included the "Integrated Report" or "Master List" of impaired waters for Group 1. That identified 53 waters that were impaired by mercury that were not included on Florida's 1998 § 303(d) list. They were considered by the State to be impaired, based on water quality data and/or fish consumption advisories. However, they were not put onto the State's Verified List, i.e. they were not included in the State's § 303(d) list, which the State submitted to EPA for approval, because the data, advisory or other indication of impairment was over 7.5 years old. Instead, the State placed those waters on its Planning List. As a result, these waters are not included in any current schedule for TMDL establishment. A list of these waters and the information on them from the Master List is Attachment A hereto, and is incorporated by reference as if repeated verbatim herein.

53. The Master List also indicates that the State took 20 known mercury impaired waters that were on the 1998 § 303(d) list and moved them to the State's Planning List, again because the data supporting listing was over 7.5 years old. The fact that they are now on the Planning List is evident from their designation as such on the Master List. Those waters are not included in the Verified List that Florida submitted to EPA as its

2002 § 303(d) list. A list of these waters and the information on them from the "master list" is Attachment B hereto, and is incorporated by reference as if repeated verbatim herein.

54. Those classes of 53 waters and 20 waters referenced above were listed as category "3C" in the Master List. The State designates waters 3C if there is enough data and information to determine if any designated use is attained pursuant to the Planning List methodology. The State's "3C" categorization is, however, inconsistent with Category 3 in the EPA's 2002 Integrated Water Quality Monitoring and Assessment Report. That applies Category 3 only where there is "insufficient or no data and information to determine if any designated use is attained." The State had enough data and information for these waters it designated "3C" to determine that designated uses were not being attained for some or all of them. However, they were not included in the § 303(d) list.

55. There are also discrepancies between the Florida Health Advisories for mercury as listed in the 2002-2003 Florida Freshwater Sport Fishing guidelines and the water bodies listed for mercury in the § 303(d) list. The 2002-2003 Florida Freshwater Sport Fishing guidelines were in the possession of EPA and the State or were available to EPA and the State. Twenty-four (24) lakes on that advisory for fish consumption due to mercury do not appear on the 2002 § 303(d) list. Neither the State nor EPA added those waters to the 2002 or 1998 § 303(d) lists. Nor did the State or EPA provide an explanation for not doing so. A list of these waters is Attachment C hereto, and is incorporated by reference as if repeated verbatim herein.

56. In addition, the State of Florida has issued a state-wide fish consumption advisory due to mercury. All waters in the state are, therefore, ones for which the effluent limitations required by 33 U.S.C. § 1311(b)(1)(A) and 33 U.S.C. § 1311(b)(1)(B) of the Clean Water Act are not stringent enough to implement any water quality standard applicable to such waters. All waters in the state should have been included in the § 303(d) list. Florida's § 303(d) list, as approved by EPA, does not include all waters in the state.

57. Through these and other instances, the state has repeatedly demonstrated that it does not view the § 303(d) list as a serious requirement, but merely as a malleable formality. This is inadequate: the § 303(d) list is intended to be a serious process and a significant step toward completion of the TMDL process. Under CWA § 303(d), 33 U.S.C. § 1313(d), and 40 C.F.R. § 130.7, the State and EPA must identify all WQLSs and include them in the § 303(d) list. However the State of Florida's § 303(d) list, as approved by EPA, does not include all WQLSs.

58. EPA should have disapproved Florida's continuing failure to submit an adequate § 303(d) list as required by 33 U.S.C. § 1313 (d), that included all of the mercury impaired waters identified above. EPA's approval of Florida's 2002 § 303(d) list, EPA's approval of the delisting or removal of mercury impaired waters from the 1998 § 303(d) list, and EPA's failure to add mercury impaired waters to the § 303(d) list, were arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law, in contravention of the CWA and actionable under the APA, 5 U.S.C. § 706(2)(A).

59. Further, EPA should have promulgated a § 303(d) list including all mercury impaired waters on behalf of the state within 60 days of disapproving the State's list, as required by Section 303 (d), 33 U.S.C. § 1313(d)(2). EPA's failure to fulfill these responsibilities violates Section 303 (d) (2) of the Clean Water Act, 33 U.S.C. § 1313 (d) (2), and its implementing regulations, including 40 C.F.R. § 130.7 (d). EPA's inaction in this case constitutes a failure of the agency to perform mandatory duties under law as described above, and constitutes agency action unlawfully withheld or unreasonably delayed, in contravention of the CWA and actionable under the APA, 5 U.S.C. § 706(1).

60. Plaintiffs have no adequate remedy at law for these violations. Each day on which EPA violates its duty to protect the water of Florida causes severe and irreparable environmental degradation and heightened public health risks because of the continuing pollution in violation of water quality standards. Therefore, Plaintiffs are entitled to the injunctive relief set forth in the prayer to prevent injury to themselves and the public.

## SECOND CLAIM FOR RELIEF

EPA Approval of Florida's Low Prioritization and Absence of Schedule for Mercury Impaired Waters
Contravenes the CWA and is actionable under the APA

61. Plaintiffs hereby incorporate all preceding paragraphs, as if repeated verbatim herein.

62. The State of Florida has not submitted to EPA a schedule for TMDL establishment for some or all of the mercury impaired waters discussed in the First Claim for Relief above. The EPA has not approved a schedule for the State of Florida's TMDL establishment for some or all of the mercury impaired waters discussed in the First Claim for Relief above. This lack of a schedule for all mercury TMDLs is contrary to 40 C.F.R.

§ (d)(1), which requires "[s]chedules for submission of TMDLs shall be determined by the Regional Administrator and the State."

63. There is no date scheduled for establishment of TMDLs for the 53 Basin 1 mercury impaired waters the State placed on the Planning List for 2002. The absence of the schedule is demonstrated by the Integrated Report or Master List for the Basin 1 waters that the State submitted to EPA with the 2002 § 303(d) list.

64. The 20 Basin 1 mercury impaired waters the State removed from the 1998 § 303(d) list and placed on the Planning List were originally included in the 1998 303(d) list. Hence they were covered by the 1999 Consent Decree in *Florida Wildlife Federation v. Browner*, N.D. Fla. no. 4:98cv356-WS, which required the State to establish TMDLs for them by 2011. But the State removed them from the 1998 § 303(d) list, and consequently has removed them from the Consent Decree.

65. The 24 mercury impaired lakes that are not included in the § 303(d) list also do not have a date scheduled for establishment of TMDLs for those waters.

66. The State has established a priority ranking for establishing TMDLs that designates all mercury impaired waters "low" priority. Florida designated a low priority for establishing TMDLs for mercury-impaired waters "due to the current insufficient understanding of mercury cycling in the environment." 62-303.500(3), F.A.C. That is contrary to 33 U.S.C. § 1313(d)(1)(A) and 40 C.F.R. § 40 CFR § 130.7(b)(4), which require prioritization based on the severity of the pollution and the uses to be made of such waters. In addition, the basis of the State's prioritization is contrary to CWA § 303(d)(1)(C)'s requirement that TMDLs be set at levels that account for "a margin of safety which takes into account any lack of knowledge."

67. The State's low prioritization of mercury based on alleged "insufficient understanding" is inconsistent with the actions of other states and EPA that have established TMDLs for mercury. For example, EPA Region IV, which includes Florida, has approved or established mercury TMDLs in both Georgia and Louisiana. EPA has also approved or established mercury TMDLs in other states. EPA has sufficient understanding of mercury to establish TMDLs.

68. EPA has approved the TMDL schedules or lack thereof as set forth above. It did so in its approval of the 2002 § 303(d) list. EPA has also approved the State's prioritization of mercury impaired waters as set forth above. These EPA actions were arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law, in contravention of the CWA and actionable under the APA, 5 U.S.C. § 706(2)(A).

69. Further, EPA should have disapproved the State's schedule and prioritization, and promulgated a schedule and prioritization of mercury waters of its own. EPA's inaction in this case constitutes a failure of the agency to perform mandatory duties under law, and constitutes agency action unlawfully withheld or unreasonably delayed, in contravention of the CWA and actionable under the APA, 5 U.S.C. § 706(1).

70. Plaintiffs have no adequate remedy at law for these violations. Each day on which EPA violates its duty to protect the water of Florida causes severe and irreparable environmental degradation and heightened public health risks because of the continuing pollution in violation of water quality standards. Therefore, Plaintiffs are entitled to the injunctive relief set forth in the prayer to prevent injury to themselves and the public.

## THIRD CLAIM FOR RELIEF

EPA's Approval of Florida's Exclusion of Waters
and De-listing of waters from the § 303(d) List
Contravenes the CWA and is actionable under the APA

71. Plaintiffs hereby incorporate all preceding paragraphs, as if repeated verbatim herein.

72. The State's 2002 § 303(d) list that EPA approved, and the 1998 § 303(d) list that was re-approved by EPA, did not include all WQLSs as required by CWA § 303(d), 33 U.S.C. § 1313(d) and 40 C.F.R. § 130.7. The State did not take into account all data and information supporting listing of waters; excluded waters known to not be meeting water quality standards; and removed from the § 303(d) list waters that had previously been determined to not be meeting water quality standards, without evidence that they now meet standards.

73. "Each State shall assemble and evaluate all existing and readily available water quality-related data and information" to develop its § 303(d) list." 40 CFR § 130.10(d)(6); 40 CFR § 130.7(b)(5). In approving Florida's 2002 303(d) List, EPA did not comply with § 130.10(d)(6) and § 130.7(b)(5) because it accepted Florida's decision to exclude water quality data not collected in the past 7.5 years or collected prior to 1995. EPA did so in instances where it did not have evidence that waters were now meeting standards. EPA did so in instances where the water quality data (that was over 7.5 years old or which was dated before 1995) indicated violations of water quality standards. The evidence before EPA was that some or all of these waters had remained at their current level of pollution or their levels of pollution were worsening.

74. EPA guidance describes only two reasons a water body may be removed from a state's 303(d) list: 1) if evidence shows it is "meeting all applicable water quality standards;" or 2) if "the original basis for delisting is determined to be inaccurate." Absent one of these reasons, EPA may not approve a state's request to delist an impaired water. Many of Florida's delistings, that EPA approved, are not in those two categories.

75. EPA approved delisting 28 WQLSs that were on the 1998 § 303(d) list despite the fact that water quality monitoring, within the last 7.5 years, demonstrated they are not meeting standards. These waters and the pollutants causing them not to meet standards are listed in Attachment D hereto, which is incorporated by reference.

76. EPA approved delistings for seven water segments due to naturally heightened levels of dissolved oxygen. These waters are listed in Attachment E hereto, which is incorporated by reference. The delisting of those waters was contrary to CWA § 303(d)(1)(C), 33 USC § 1313(d)(1)(C), which specifically requires states to account for "seasonal variations" and the "relationship between effluent limitations and water quality," which indicates water quality standards must be achieved despite natural conditions in the water. It was also inconsistent with 40 C.F.R. § 130.2(i), which requires "natural background" shall be included in TMDL calculations. The State or EPA could have performed Use Attainability Analyses (UAA) for these waters to establish site specific water quality standards for them, or exemptions for them from the state wide low-dissolved oxygen standards, but has not done so. Unless and until a UAA is done and the State's water quality standards modified to comport with the UAA, these waters must be included in the § 303(d) list.

77. EPA also approved delisting for 19 water segments containing elevated levels of nutrients in violation of water quality standards. These waters are listed in Attachment F hereto, which is incorporated by reference. The rationale used for delisting these waters was the "application of new methodology" and a flaw in the original listing methodology. Instead of questioning the State's method of monitoring and its results, EPA simply accepted the old data as flawed. This is contrary to 40 CFR § 130.7(b)(6), which requires the state to provide a description of the methodology used as well as a rationale for any decision not to use existing and readily available data.

78. Based on the above, EPA's approval of the State's 2002 § 303(d) list, its approval of the delisting or removal of waters from the 1998 § 303(d) list, and its failure to add waters to the 1998 § 303(d) list, are arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law, contrary to the APA, 5 U.S.C. § 706(2)(A). Further, EPA's failure to disapprove the 2002 § 303(d) list and the 1998 § 303(d) list constitutes agency action unlawfully withheld or unreasonably delayed, in contravention of the APA, 5 U.S.C. § 706(1).

79. Plaintiffs have no adequate remedy at law for these violations. Each day on which EPA violates its duty to protect the water of Florida causes severe and irreparable environmental degradation and heightened public health risks because of the continuing pollution in violation of water quality standards. Therefore, Plaintiffs are entitled to the injunctive relief set forth in the prayer to prevent injury to themselves and the public.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief as follows:

1. That the court issue a declaratory judgment that:

a) the Defendants are in violation of the Clean Water Act and Administrative Procedure Act as alleged herein and that the State of Florida's § 303(d) list is void and of no effect;

b) that EPA's approval of the State's 2002 § 303(d) list was arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A);

c) that EPA's approval of the State's delisting and removal of waters from the 1998 § 303(d) list; and EPA's failure to add waters to the 1998 § 303(d) list, was arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A);

d) that EPA's failure to disapprove the State's 2002 § 303(d) list and the 1998 § 303(d) list constitutes agency action unlawfully withheld or unreasonably delayed, in violation of the APA, 5 U.S.C. § 706(2)(A).

2. That the court set aside the EPA approval of the 2002 § 303(d) list and the 1998 § 303(d) list; and remand the lists to EPA with instructions to disapprove said lists and establish its own list within 60 days of the disapproval, said list to include the waters and pollutants identified in this Complaint as wrongfully omitted from the § 303(d) list.

3. That the court set aside EPA's approval of the State of Florida's prioritization and schedule for establishing TMDLs as set forth in this Complaint, and remand the prioritization and schedule to EPA with instructions to disapprove said prioritization and

schedule and establish its own prioritization and schedule, including a reasonable schedule for establishing TMDLs for the waters and pollutants identified in this complaint as wrongfully omitted from the § 303(d) list.

4. For all of Plaintiffs' costs, expenses and reasonable attorney fees as provided for by law.

5. For any and all other relief that the court deems just and proper in this matter.

Dated this 22nd day of April, 2004.

Respectfully submitted,

Eric E. Huber
Sierra Club
2260 Baseline Road, Ste. 105
Boulder, CO 80302
(303) 449-5595
(303) 449-0740 (fax)

David A. Ludder
Legal Environmental Assistance Foundation, Inc.
1114 Thomasville Road, Suite E
Tallahassee, FL 32303-6290
(850) 681-2591
(850) 224-1275 (fax)

for James M. Stuhltrager
James R. May
Mid-Atlantic Environmental Law Center
c/o Widener University School of Law
Environmental and Natural Resources Law Clinic
4601 Concord Pike
P.O. Box 7474
Wilmington, DE 19803-0474
(302) 477-2086
(302) 477-2032 (fax)

| Planning Unit Name | WBID | Water Segment Name | Waterbody Type | 1998 303(d) Parameters of Concern | Parameters Assessed Using the Impaired Waters Rule | Proposed Status (Meets Standards, No Data, Insufficient Data, Planning List, Verified List) | EPA's Integrated Report Category | Priority for TMDL Development | Projected Year for TMDL Development | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Lake Iamonia | 442 | Lake Iamonia Outlet | Lake | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish: No Flow Unless Affected by Ochlockonee River flooding |
| North Ochlockonee River | 1297C | Lake Talquin | Lake | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish. |
| North Ochlockonee River | 1297D | Lake Talquin | Lake | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish. |
| North Ochlockonee River | 1304 | Rocky Comfort Creek | Stream | | Mercury-Fish | Planning List | 3C | | | Verify dates are within 7.5 years for fish. |
| North Ochlockonee River | 424 | Little River | Stream | | Mercury-Fish | Planning List | 3C | | | Upstream |
| North Ochlockonee River | 798 | Double Branch | Stream | | Fish-Mercury | Planning List | 3C | | | |

ATTACHMENT A

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| North Ochlockonee River | 806 | Gulley Branch | Stream | | Fish-Mercury | Planning List | 3C | | | |
| Sopchoppy River | 1038 | West Br Sopchoppy Ri | Stream | | Mercury-Fish | Planning List | 3C | | | Verify dates are within 7.5 years for fish and Blackwater |
| Sopchoppy River | 1248C | Ochlockone e Bay | Stream | | Mercury-Fish | Planning List | 3C | | | Verify dates are within 7.5 years for fish |
| Sopchoppy River | 998 | Sopchoppy River | Stream | | Mercury-Fish | Planning List | 3C | | | Verify dates are within 7.5 years for fish |
| South Ochlockonee River | 1035 | Reedy Branch | Stream | | Mercury-Fish | Planning List | 3C | | | Verify dates are within 7.5 years for fish. |
| South Ochlockonee River | 1208 | Cow Creek | Stream | | Mercury-Fish | Planning List | 3C | | | Verify dates are within 7.5 years for fish. |
| South Ochlockonee River | 1241 | Crooked River | Stream | | Mercury-Fish | Planning List | 3C | | | Verify dates are within 7.5 years for fish. |
| South Ochlockonee River | 1248B | Ochlockone e Bay | Stream | | Mercury-Fish | Planning List | 3C | | | Verify dates are within 7.5 years for fish. |
| South Ochlockonee River | 985 | Soapstone Branch | Stream | | Mercury-Fish | Planning List | 3B | | | |
| South Ochlockonee River | 989 | Hubbard Branch | Stream | | Mercury-Fish | Planning List | 3B | | | Verify data are within 7.5 years for fish. |
| Alapaha River | 3323 | Alapahooch ee River | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish. |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Alapaha River | 3324 | Alapaha River | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish. |
| Alapaha River | 3331 | Turket Creek | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish. |
| Alapaha River | 3324A | Alapaha River | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish. |
| Lower Suwannee | 3422S | Fanning Springs | Spring | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Upper Suwannee | 3343 | Sandlin Bay Drain | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Upper Suwannee | 3361 | Unnamed Ditch | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Upper Suwannee | 3368 | Little Creek | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish, and Blackwater. |
| Upper Suwannee | 3376 | Unnamed Drain | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Upper Suwannee | 3383 | Cowhouse Bay Drain | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Upper Suwannee | 3387 | Unnamed Slough | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Upper Suwannee | 3388 | Deep Creek | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |

A-2

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Upper Suwannee | 3404 | Unnamed Slough | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Upper Suwannee | 3413 | Unnamed Branch | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Santa Fe River | 3566 | Lake Butler | Lake | | Mercury-Fish | Planning List | 3C | | | |
| Santa Fe River | 3593 | Lake Crosby | Lake | | Mercury-Fish | Planning List | 3C | | | |
| Santa Fe River | 3595 | Unnamed Slough | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish. |
| Santa Fe River | 3598B | Lake Rowell | Lake | | Mercury-Fish | Planning List | 3C | | | |
| Santa Fe River | 3605G | Santa Fe Lake | Lake | | Mercury-Fish | Planning List | 3C | | | Fish Tissue Samples Taken in 2001 Average Higher than 0.5ug/L Mercury |
| Santa Fe River | 3635A | Hampton Lake | Lake | | Mercury-Fish | Planning List | 3C | | | |
| Waccasassa River | 3699 | Waccasassa River | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Waccasassa River | 3703 | Little Waccasassa River | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Waccasassa River | 3712 | Unnamed Slough | Lake | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Central Old Tampa Bay Tributary | 1486A | Lake Tarpon | Lake | | Mercury-Fish | Planning List | 3C | | | WBID revised-previously WBID 1486. |
| Coastal Hillsborough Bay Tributary | 1536C | Tampa Bypass Canal | Stream | | Mercury-Fish | Planning List | 3C | | | |
| Everglades West Coast-Inner Drainage Area | 3255 | C-139 | Stream | | Mercury (in fish tissue) | Planning List | 3C | | | Need to confirm 7.5 year age of data. |
| Everglades West Coast-Inner Drainage Area | 3261A | Barron River Canal (south) | Estuary | | Mercury (in fish tissue) | Planning List | 3C | | | Need to confirm 7.5 year age of data. |
| Everglades West Coast-Inner Drainage Area | 3261C | Barron River Canal (north) | Stream | | Mercury (in fish tissue) | Planning List | 3C | | | Need to confirm 7.5 year age of data. |
| Everglades West Coast-Inner Drainage Area | 3269 | L-28 Gap | Stream | | Mercury (in fish tissue) | Planning List | 3C | | | Need to confirm 7.5 year age of data. |
| Everglades West Coast-Southwest Coast | 3259A | Cocohatche e River | Stream | | Mercury (in fish tissue) | Planning List | 3C | | | Need to confirm 7.5 year age of data. |

| Ocklawaha HUC | WBID | 1998 303(d) WBID | Water Segment Name | Waterbody Type | 1998 303(d) Parameters of Concern | New Parameters of Concern From IWR | Proposed Status (Meets standards, no data, insufficient data, Planning List, Verified List) | EPA's Integrated Report Category | Priority for TMDL Development | Projects Year for TMDL Development | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lake Griffin Unit | 2740F | 2740F | Ocklawaha R/ Sunnyhill | Stream | | Merc-Fish | Planning | 3C | | | No fish tissue analysis within the past 7.5 years. |
| Lake Griffin Unit | 2783C | | Swim Pond | Lake | | Merc-Fish | Planning | 3C | | | Advisory issued in 1993. No fish data since 1994. |
| Marshall Swamp Unit | 2785A | | Smith Lake | Lake | | Merc-Fish | Planning | 3C | | | Mercury Advisory has not been issued, however average fish sample Hg value for 19 fish collected in 2000 exceeded 0.5 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Palatlakaha River | 2839H | | Lake Minnehaha | Lake | | Merc-Fish | Planning | 3C | | | No fish tissue analyses within the past 7.5 years. |
| Palatlakaha River | 2839J | | Lake Louisa | Lake | | Merc-Fish | Planning | 3C | | | Advisory issued in 1993. No fish data since 1994. |
| Rodman Reservoir Unit | 2779A | | Mill Dam Lake | Lake | | Merc-Fish | Planning | 3C | | | Advisory issued in 1993. No fish data since 1994. |
| Rodman Reservoir Unit | 2771A | | Lake Eaton | Lake | | Merc-Fish | Planning | 3C | | | Advisory issued in 1993. No fish data since 1994. |

| Planning Unit Name | WBID | Water Segment Name | Waterbody Type | 1998 303(d) Parameters of Concern | Parameters Assessed Using the Impaired Waters Rule | Proposed Status (Meets Standards, No Data, Insufficient Data, Planning List, Verified List) | EPA's Integrated Report Category | Priority for TMDL Development | Projected Year for TMDL Development | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| North Ochlockonee River | 1297E | Ochlockonee River | Stream | Mercury-Fish | | Planning List | 3c | Low | 2011 | Verify data are within 7.5 years for fish. |
| North Ochlockonee River | 1297F | Ochlockonee River | Stream | Mercury-Fish | | Planning List | 3c | Low | 2011 | Verify data are within 7.5 years for fish. |
| South Ochlockonee River | 1297A | Ochlockonee River | Stream | Mercury-Fish | | Planning List | 3c | Low | 2011 | |
| South Ochlockonee River | 1297B | Ochlockonee River | Stream | | Mercury-Fish | Planning List | 3c | Low | 2007 | |
| Fenholloway | 3473B | Fenholloway Below Pulp Mill | Stream | Mercury-Fish | Mercury-Fish | Planning List | 3c | Low | 2011 | Verify data are within 7.5 Years for fish |
| Lower Suwannee | 3422 | Suwannee River (Lower) | Stream | | Mercury-Fish | Planning List | 3c | | | Verify data are within 7.5 years for fish |
| Middle Suwannee | 3422B | Suwannee River (Lower) | Stream | | Mercury-Fish | Planning List (Also on Verified List) | 3c | | | Verify data are within 7.5 years for fish |

— ATTACHMENT B —

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Upper Suwannee | 3341 | Suwannee River (Upper) | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Upper Suwannee | 3341A | Suwannee River (Upper) | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish, Blackwater. |
| Upper Suwannee | 3341B | Suwannee River (Upper) | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish, Blackwater. |
| Upper Suwannee | 3341C | Suwannee River (Upper) | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish, Blackwater. |
| Santa Fe River | 3605A | Santa Fe River | Stream | Mercury-Fish | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Santa Fe River | 3605B | Santa Fe River | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Santa Fe River | 3605C | Santa Fe River | Stream | | Mercury-Fish | Planning List | 3C | | | Verify data are within 7.5 years for fish |
| Santa Fe River | 3605F | Altho Drainage | Lake | Mercury-Fish | Mercury-Fish | Planning List | 3C | Low | 2011 | Verify data are within 7.5 years for fish |

B-1

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Withlacoochee River | 3315 | Withlacoochee River | Stream | Mercury-Fish | Mercury-Fish | Planning List | 3C | Low | 2011 | Verify data are within 7.5 years for fish. Seasonal do SSAC in place for part of river. |
| Everglades West Coast-Inner Drainage Area | 3261C | Tamiami Canal | Stream | Mercury in fish tissue | Mercury (in fish tissue) | Planning List | 3C | Low | 2011 | Need to confirm 7.5 year age of data. |

| Ocklawaha HUC | WBID | 1998 303(d) WBID | Water Segment Name | Waterbody Type | 1998 303(d) Parameters of Concern | New Parameters of Concern From IWR | Proposed Status (Meets standards, no data, insufficient data, Planning List, Verified List) | EPA's Integrated Report Category | Priority for TMDL Development | Projects Year for TMDL Development | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Marshall Swamp Unit | 2740D | 2740D | Ocklawaha Riv Ab Daisy | Stream | Merc-Fish | | Planning | 3C | | | No fish tissue analyses in the past 7.5 years. |
| Rodman Reservoir Unit | 2740A | 2740A | Ocklawaha Riv Ab St Jr | Stream | Merc-Fish | | Planning | 3C | Low | 2011 | No fish tissue analyses within the past 7.5 years. |
| Rodman Reservoir Unit | 2740B | 2740B | Lake Ocklawaha | Lake | Merc-Fish | | Planning | 3C | | 2001 | |

**24 Lakes Not on 2002 List**

| | | |
|---|---|---|
| Alligator | Crooked | Eaton |
| Annie | Dead Lakes | Hart |
| Brick | Deer Point | Hatchinaha |
| The Butler Chain of Lakes | Dias Dorr | Iamonia |
| Istokpoga | Josephine | Kerr |
| Louisa | Mill Dam | Ocean Pond |
| Ocheesee Pond | Placid | Savannah Marsh |
| Swim Pond | Talquin | Tarpon Lakes |

ATTACHMENT C

**Exceedances Within 7.5 years**

For total coliforms:

| | | |
|---|---|---|
| Econfina River | New River | Channel G |
| Orange Creek | Alligator Lake | Allen Creek |
| Cockroach Bay | Falling Creek | Cross Canal (North) |
| Rocky Creek | Palm River | Smacks Bayou |
| Moccasin Creek | Tampa Bay (Upper) | Coffeepot Bayou |
| Sixmile Creek | Old Tampa Bay | Big Bayou (Basin W) |
| Ocklawaha River above Lake Ocklawaha | | |

For fecal coliforms:

| | | |
|---|---|---|
| Econfina River | New River | Sixmile Creek |
| Fenholloway at Mouth | Alligator Lake | Palm River |
| Orange Creek | Rocky Creek | Tampa Bay (Upper) |
| Allen Creek | Sweetwater Creek | Old Tampa Bay |
| Ocklawaha River above Lake Ocklawaha | | |

For un-ionized ammonia:

| | | |
|---|---|---|
| Lake Apopka Outlet | Helena Run | Lake Harris |
| Lake Yale Canal | Lake Beauclair Outlet | |

For chlorides:

| | | |
|---|---|---|
| Lake Okeechobee | | |

ATTACHMENT D

## Natural Conditions

| | | |
|---|---|---|
| Econfina River | Roaring Creek | Falling Creek |
| Blue Springs | Camp Branch | Deep Creek |
| Holiday Springs | | |

**Nutrients**

| | | |
|---|---|---|
| Estero Bay Wetlands | Spring Creek | Orange Creek |
| Gordon River | Lake Iamonia | Hatchet Creek |
| Bishop Creek | Lake Alice | Tumbling Creek |
| Mullet Creek | New River | Camp Branch |
| Long Branch | Deep Creek | Brooker Creek |
| Direct Runoff to Bay | Suwannee River (Upper) | |
| Fenholloway above Pulp Mill | Dora Canal (Silver River Run) | |

ATTACHMENT E